## Elise Alma Kohn, Appellee, v. Carl W. Kohn, Appellant.

### Gen. No. 10,337.

Opinion filed July 7, 1949. Released for publication July 27, 1949.

CHARLES G. SEIDEL and ERNEST W. AKEMANN, both of Elgin, for appellant.

BEN RIFKEN, of Elgin, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On September 3, 1947, Elise Alma Kohn filed her complaint alleging that she and Carl W. Kohn were married on December 12, 1946, and lived together, in Elgin, Illinois until September 2, 1947, at which time, on account of his misconduct, she ceased living with him and was living separate and apart from him through no fault of her own. Defendant filed his answer, admitting the residence of the parties, their marriage and separation but denied that the separation was due to his misconduct and denied all acts of wrongdoing alleged in the complaint.

Upon a hearing before the chancellor a decree was rendered finding that the plaintiff was living separate and apart from her husband through no fault of her own and that she was entitled to separate maintenance. The decree ordered defendant to pay $20 per week for her separate maintenance, together with attorney fees and costs. To reverse this decree the record is before us for review.

The record discloses that the decree was rendered and filed on July 28, 1948 and on August 5, 1948, a notice of appeal was filed. On September 23, 1948, by stipulation of the parties, the time for filing the report of the proceedings at the trial was extended to and including November 6, 1948. On November 5, 1948, appellant filed in this court his motion for an extension of time in which to file the report of the proceedings at the trial to and including January 20, 1949. Accompanying this motion was the consent of appellee, by her attorney, to the granting of this motion and on November 9, 1948, an order was entered by this court in accordance with said stipulation. On January 20,

1949, the report of the proceedings at the trial was filed with the clerk of the circuit court and on the following day the trial court record was certified to by the clerk and a transcript thereof filed in this court on January 28, 1949.

Counsel for the appellee filed herein, on April 26, 1949, a motion to dismiss this appeal. This motion was taken with the case. It is conceded by counsel in support of this motion that the report of the proceedings at the trial was filed in the trial court in accordance with the order of this court entered on November 9, 1948, but counsel insist that this order not only required the report of trial proceedings to be filed in the lower court on or before January 20, 1949, but also required the transcript of the record to be filed in this court not later than January 20, 1949.

■ ■ Paragraph 1 (c) of Supreme Court Rule 36 [Ill. Rev. Stat. 1947, ch. 110, par. 259.36, subpar. 1(c); Jones Ill. Stats. Ann. 105.36, subpar. 1(c)] (370 Ill. 38) provides that the report of the proceedings at the trial shall be filed in the trial court within fifty days after the appeal has been perfected. Paragraph 2(a) of the above rule provides that the record on appeal shall be transmitted to the reviewing court not more than sixty days after notice of appeal has been filed. As said in *Finn v. Williams,* 376 Ill. 95, at page 97, a ten-day differential exists with respect to filing the report of proceedings in the trial court and the filing of the record on appeal in the reviewing court. Said paragraph 2(a) of said rule 36 further provides that in the event the reviewing court shall make an order extending the time allowed for filing the report of the proceedings at the trial, the time within which the record on appeal shall be transmitted to the reviewing court shall be correspondingly extended. The order of this court, therefore, extending the time for filing the report of proceedings in the trial court to and including January 20, 1949, correspondingly extended

the time for filing the transcript of the record in this court to January 30, 1949. The record on appeal was filed in this court on January 28, 1949. It follows therefore that the motion of appellee to dismiss the appeal must be denied.

The parties hereto were the only witnesses and from their testimony it appears that at the time of their marriage the defendant was seventy-eight years of age and the plaintiff sixty-three. Each had been previously married. The defendant lives in his six room house at 266 Highland avenue, Elgin and had been living there for more than fifty years. The plaintiff first became acquainted with the defendant and his then wife in 1926 or 1927, at which time she and her husband lived in Elgin and they were quite frequently in the home of defendant and his wife and they played cards together and all belonged to the Turnverein, a German social club. After living with her first husband for twenty-three years the plaintiff was divorced and in 1938, she went to California and for eight years made her home there with her daughter. While in California plaintiff wrote infrequently to defendant's first wife. On December 4, 1945, defendant's first wife died and plaintiff sent him a card of sympathy and three months later, according to the testimony of the plaintiff, defendant wrote her requesting that she come to Elgin and marry him. She replied and refused to come to Illinois stating that she did not like to leave California. According to the testimony of the defendant the plaintiff did not refuse to marry him but wanted him to come to California and live there. Thereafter defendant again married and after living with his second wife a couple of weeks they were divorced. According to the plaintiff, shortly after he procured a divorce from this second wife, the defendant wrote to the plaintiff in California and again requested her to come to Elgin and marry him. Her testimony is that he sent her $100 and she came to his

home in Elgin where they stayed for three weeks before they were married in Elgin on December 12, 1946.

The plaintiff testified that the defendant never permitted her to buy the groceries; that he would not buy what the plaintiff desired to eat; that for two days each week they had pork chops; hamburgers for two days; fish two days and potato pan cakes for the last day of each week; that she requested him to replace an ironing board which had been used for thirty-one years with a new one but he refused and he also refused to buy her a new coffee pot. She further testified that she was obliged to sleep in a cold bedroom and that the defendant only bathed once a week. Her testimony was that they had planned to go to California on a visit and that defendant had purchased the railroad tickets. As abstracted she continued: "We were to leave for California on September 6th. I left the home on September 2nd. The reason that I left Mr. Kohn on September 2nd was that I said: 'Carl, Monday is washday, Tuesday is ironing day and Wednesday I pack my clothes and go.' And I went upstairs to my bedroom and half an hour later he comes up, and came into the room and said kind words to me. And so I don't go, and it goes on the same and Wednesday comes and it is the same and then again I tried to live with him but a few days later it was the same. He took me to the Paris restaurant and from there we went to a show together. It was the day after that when I left. I left him on September 2, 1947 because I did not want to go to California with him. I told him before September 2nd that I was going to leave. He makes me sick. I will not go back and live with him. The climate in Elgin does not agree with me. I have sinus trouble. I have to get my health back. I have not seen a doctor about it."

The evidence is that the defendant furnished the plaintiff money to come from California to Illinois at the time of their marriage; that she had no property

of her own and that he provided her with a home, comfortably furnished and during the first two months of their married life gave her $10 per month for spending money and later increased it to $20 per month. The evidence is further that a short time before the separation, the plaintiff requested the defendant to go with her to California for a visit and he had consented to do so and had purchased their tickets but her testimony is that she did not want him to accompany her there. She was dissatisfied with the climate in Illinois and also with the individual and economical habits of her husband and the food which he provided. There is, however, no charge or proof of any threats or physical acts of cruelty or drunkenness on the part of the defendant and her testimony is that he bought the necessary food and when the weather was good they always went to a restaurant for their Sunday dinner.

According to the testimony of the defendant he washed every day in the morning and evening and took a bath once a week; that he and his wife discussed the type of food they desired; that she never asked to have the right to buy the groceries but she told him what to buy and he went down town and got it. That whenever she asked for money for her personal needs he gave it to her, usually $10 every two weeks and if this was not enough, he gave her something extra. The evidence is that they did not quarrel, had no words or arguments and on the day before she left they had a chicken dinner at the restaurant and went to a show together and she did not tell him she intended to leave him, did not even say good-bye and that he had no idea she intended to leave and his testimony was that he loved her.

At the time of the hearing the defendant was unemployed and had been retired for fifteen or sixteen years. For many years he was an employee of the watch factory at Elgin and was receiving a $20 per month pension from that concern. He owned the house

in which the parties lived and another house from which he received a monthly rental of $30 and there were no incumbrances upon either of these properties. . The taxes thereon amounted to $235 per year and his total gross income approximated $200 per month.

We have read this record with care. The parties hereto are well advanced in years. The defendant is an old man. What he has accumulated was acquired through years of factory work and economical habits. Plaintiff was no stranger to the defendant or his habits at the time of her marriage. She had known him for many years and for two or three weeks before their marriage, lived at his home. After eight months and twenty-one days of married life she left him because she chose to live with her daughter in California in preference to living with her husband and in his home in Illinois.

It has been held that a wife is not bound to live with her husband if his conduct is such as will directly endanger her health, nor where his course of conduct is such as will necessarily and inevitably render her life miserable and living with him as his wife unendurable, but incompatibility of disposition and trivial difficulties will not justify a separation. (*Johnson v. Johnson,* 125 Ill. 510.)

In our opinion the undisputed evidence in this record does not disclose that the plaintiff had good cause, within the meaning of the authorities, for leaving the defendant and living separate and apart from him, and the chancellor erred in so finding.

The decree of the circuit court of Kane county will therefore be reversed and the cause remanded with directions to enter a decree dismissing the complaint.

*Reversed and remanded with directions.*