MARGARET A. MILLER, Plaintiff-Appellee, *v.* CELESTINE SCHMITZ, Defendant-Appellant.

Fifth District    No. 79-414

Opinion filed January 21, 1980.

John W. Fribley, of Fribley & Proffitt, of Pana, for appellant.

Franklin E. Dove, of Dove and Dove, of Shelbyville, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant Celestine Schmitz appeals from the judgment of the Circuit Court of Shelby County granting an easement across his property to Margaret Miller, the plaintiff, and enjoining him from interfering with plaintiff's use of the easement.

Plaintiff and defendant own adjoining farmland in Shelby County. Defendant's land lies to the east of plaintiff's and is bordered on the east by a township road running north to south. To the west, another north-south road forms the western border of plaintiff's property. The eastern boundary of plaintiff's land and the western boundary of defendant's land abut.

Plaintiff's land is bisected by Robinson Creek, separating her property into a western parcel and an eastern parcel. The western parcel is bordered by the township road on the west and the creek on the east. There is a 40-foot precipitous slope of the land to the creek bed. Plaintiff's eastern parcel is bordered by the creek on the west and defendant's land on the east. The creek's average depth is about four feet and its width averages approximately 40 feet. These figures vary seasonally. The township road to the west provides access to the western parcel of plaintiff's land, but the eastern parcel is inaccessible to a public road because it is bordered by the creek on one side and defendant's land on the other. In order to move farm machinery onto the eastern portion, plaintiff must traverse defendant's property or construct a bridge over the creek.

Plaintiff and defendant derive their titles from a common grantor, Henry Williams, who owned the entire tract in 1874. In 1887 Williams divided his land, selling what is now plaintiff's property to John Kimlel and retaining the property owned by defendant until 1912, when he sold it to defendant's predecessor in title.

There was no testimony concerning Williams' use of the property or his means, if any, of traversing the creek, although the property was admittedly all farmland and was farmed before 1900. It was uncontroverted that before the turn of the century, Kimlel built a wooden bridge across the creek in order to farm the property to the east of the creek. The bridge was adequate for a team and wagon and later, for a tractor. In 1944 the bridge was damaged by a flood and was not used thereafter for farm machinery and would not have been adequate for modern farm machinery.

Plaintiff claims an easement by implication over defendant's land abutting the township road to the east for the benefit of plaintiff's eastern parcel. Defendant asserts that there is no true necessity for an easement

inasmuch as plaintiff could construct a new bridge across the creek. After granting a preliminary injunction to the plaintiff, in its final order, the trial court found that no reasonable access to the public road from plaintiff's property existed except by means over defendant's land, and that this means of access had been used by the common grantor. Defendant appeals maintaining that plaintiff's proof has not satisfied the requirements for an easement by implication.

■■ Three conditions are essential for an easement by implication: first, ownership of the dominant and servient estates by a common grantor followed by separation of title; second, use of the easement prior to separation in an apparent, obvious, continuous and manifestly permanent manner; and third, that the easement be necessary to the beneficial enjoyment of the dominant estate. *People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 171 N.E.2d 599.

■■ There being no controversy concerning initial common ownership, the first element is satisfied. There was no direct evidence concerning the common grantor's use of the easement, but the testimony indicated that a bridge across the creek did not exist until after Williams conveyed the land to plaintiff's predecessor in title. Plaintiff argues that before Kimlel acquired the land and built the bridge, Williams must have approached the eastern bank of the creek by crossing over his adjoining eastern property, thereby satisfying the second element of prior use. Defendant argues that this conclusion is unsupported by direct evidence and is contradicted by the testimony of defendant's predecessor in title, Elmer Harlow, who bought the property from Williams in 1912 and held it until 1944. During Harlow's ownership the property was fenced, and no access to the eastern side of the creek was taken across it; however, this fact sheds little light on the common grantor's use of the entire tract. Prior to the construction of the bridge, and at the time of unity of ownership in Williams, it would appear that the land east of Robinson Creek would have been accessible only from the eastern part of Williams' property. The easement would have been created at the time of severance of that part of the property now owned by plaintiff. As noted in *People ex rel. Helgeson v. Hackler*, the easement is created, if at all, at the time of severance of title. The easement may lie dormant for an extended period of time while the owner of the dominant estate has permissive access to his land by other means. (*Finn v. Williams* (1941), 376 Ill. 95, 33 N.E.2d 226.) For many years, defendant farmed plaintiff's property as a tenant and admittedly crossed his own land to reach plaintiff's land lying east of Robinson Creek.

■■ There was no direct evidence of Williams' access to the creek tract by way of his adjoining eastern land, but the trial court reasonably concluded that such access must have been taken because the only other approach

would have been across the creek itself. Although prior use by the grantor is a relevant factor indicating necessity for the easement, the Restatement of Property recognizes that proof of prior use is not required when the land presently could not be used, absent the easement. Moreover, "[i]f land can be used without an easement, but cannot be used without disproportionate effort and expense, an easement may still be implied * * * on the basis of necessity alone without reference to prior use." Restatement of Property §476, comment g, at 2983 (1944).

It was stipulated that Robinson Creek overflows one or two times each spring before crop season and once every three to four years during crop season and has done so for 100 years. Plaintiff estimated that the creek is normally three to four feet deep but that the depth and width are variable according to the season. James Mose, a civil engineer who inspected plaintiff's property, testified that when he viewed the creek, it was approximately 40 feet wide and about 6 feet deep, but that during the crop season it was shallower. These facts support the conclusion that the creek was impassable and in order to reach its eastern bank, overland access necessarily existed. Without such access, the eastern portion of the tract abutting the creek is landlocked.

■■ The law recognizes that when an owner of land conveys a parcel thereof which has no reasonable outlet to the highway except over the remaining land of the grantor or over the land of strangers, an easement by implication exists over the grantor's retained land. (*Walker v. Witt* (1954), 4 Ill. 2d 16, 122 N.E.2d 175.) This rule of construction has been adopted "in pursuance of considerations of public policy favorable to the full utilization of the land, and in accordance with the presumable intention of the parties that the land shall not be without any means of access * * *." 3 Tiffany, Real Property §793, at 286 (3d ed. 1939); Denissen, *Private Ways: Title and Title Evidence*, 45 Ill. Bar J. 686 (1957).

●■■ In order to satisfy the required element of necessity, it is sufficient if the claimed easement is highly convenient and beneficial. (*Sheehan v. Sagona* (1958), 13 Ill. 2d 341, 347, 148 N.E.2d 795, 798; *Wetmore v. Ladies of Loretto, Wheaton* (1966), 73 Ill. App. 2d 454, 462, 220 N.E.2d 491, 495.) Plaintiff testified that her annual gross income from crops grown on the eastern portion ranged from $500 to $900 over the past 15 years. James Mose estimated that it would cost plaintiff $24,790 to construct a low-water bridge across the creek and $1,000 annually to maintain it. The benefit to be enjoyed by plaintiff from the claimed easement is obvious; it allows her to have access to her otherwise landlocked eastern cropland without the necessity of substantial expenditures. While defendant objected to this testimony as being improper rebuttal, the trial court, considering that the cause was tried before the court, allowed the testimony. We cannot say this was an abuse of discretion, considering that

it could reasonably be considered rebuttal to defendant's affirmative defense which alleged want of necessity because of prior access over the bridge that formerly existed.

• ■■ An easement by implication, once established, is not terminated by nonuse. The easement survives the interruption and is simply considered dormant. (*Finn v. Williams* (1941), 376 Ill. 95, 33 N.E.2d 226.) Therefore, the nonuse during Harlow's ownership is not dispositive of plaintiff's claim. Although the easement may be extinguished by abandonment (28 C.J.S. *Easements* §§58, 60 (1941)), defendant did not raise this issue at trial or in his briefs, and we need not address it.

The trial court's determination that an easement by implication exists on behalf of plaintiff over the land of defendant is not against the manifest weight of the evidence. The judgment of the Circuit Court of Shelby County is affirmed.

Affirmed.

JONES, P. J., and KASSERMAN, J., concur.